UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SYLVESTER TRAYLOR,
    *Plaintiff*,

v().                                                                                      No. 3:23-cv-00329 (JAM)

PACCIUCO, LLC *et al.*,
    *Defendants*.

**ORDER GRANTING MOTIONS TO DISMISS**

Plaintiff Sylvester Traylor brings this case as part of a long-running housing dispute. Traylor once owned a home in Waterford, Connecticut, but the town foreclosed on the property to recover for unpaid property tax and utility bills. A company later purchased the property at auction for $150,000, the entirety of which went to pay off Traylor's debts. The company then initiated eviction proceedings against Traylor that remain pending in state court.

Traylor has now filed this federal lawsuit. His sprawling amended complaint encompasses a dozen defendants, including the State of Connecticut, the Town of Waterford, two companies, four attorneys, two town officials, one private individual, and the Housing Session of the Connecticut Superior Court. Traylor asserts a range of claims under 42 U.S.C. §§ 1983, 1985(3), the Connecticut Constitution, and the Connecticut Unfair Trade Practices Act.

The twelve defendants have collectively filed six motions to dismiss. For the reasons set forth below, I will grant the motions to dismiss as to all live claims and deny them as moot to the extent that they address claims Traylor has withdrawn.

**BACKGROUND**

I take the facts as stated in Traylor's complaint and corresponding exhibits as true for the purpose of this ruling. I also take judicial notice of the filings in prior state court mortgage foreclosure actions against Traylor as well as the currently pending state court eviction action

1

against him. *See, e.g.*, *Bailey v. Interbay Funding, LLC*, 2018 WL 1660553, at *2 & n.2 (D. Conn. 2018); *see also Bristol v. Nassau Cnty.*, 685 F. App'x 26, 28 (2d Cir. 2017).

The roots of this action stretch as far back as 2004. Back then, Traylor executed a mortgage for $37,000 in favor of Emporio, LLC. *See PHH Mortg. Corp. v. Traylor*, 2010 WL 2926462, at *1 (Conn. Sup. Ct. 2010). Emporio subsequently transferred that mortgage to one of the defendants in this case, PHH Mortgage Corporation. *Ibid.*

In 2007, PHH sought to foreclose on the mortgage, alleging in Connecticut state court that Traylor had failed to make the required payments on the loan since 2005. *Ibid.* Among his defenses, Traylor argued that PHH had violated the Connecticut Unfair Trade Practices Act ("CUTPA"). *Ibid.*

The state court denied PHH's motions for summary judgment. *See id.* at *4; *PHH Mortg. Corp. v. Traylor*, 2014 WL 2853889, at *1-2 (Conn. Sup. Ct. 2014). PHH later withdrew its foreclosure action.[1] Traylor, however, appears to have (incorrectly) drawn the conclusion that PHH had been adjudged to have violated CUTPA.[2]

In 2018, the Town of Waterford sought to foreclose on its liens against Traylor's property, citing eight years of unpaid property taxes.[3] Alan Wilensky worked as a tax collector for the town.

The Connecticut Superior Court granted summary judgment against Traylor in 2021 and ordered foreclosure by sale.[4] *See also Town of Waterford v. Traylor*, 2021 WL 1827161, at *2

---

[1] *See PHH Mortg. Corp. v. Traylor*, KNL-CV-07-5004315-S at Docs. #259.00, #262.00.
[2] *See* Doc. #130 at 71 (¶ 152) (pointing to Exhibits J and K as evidence of PHH's CUTPA liability). A review of Exhibits J and K reveal that these are merely the rulings denying summary judgment in PHH's case against Traylor. They do not reveal any judgment against PHH for violating CUTPA. *See generally id.* at 168-178.
[3] *See Town of Waterford v. Traylor*, KNL-CV18-6037728-S (hereinafter "Foreclosure Action") at "Complaint."
[4] *See* Foreclosure Action at Docs. #232, #178.50.

(Conn. Super. Ct. 2021), *aff'd*, 216 Conn. App. 902 (2022). Lloyd Langhammer of the Law Offices of Lloyd Langhammer represented Waterford during the proceedings.[5]

Following the judgment against him, Traylor sought to forestall the foreclosure by belatedly raising a variety of defenses. He argued that his putative judgments against PHH for CUTPA violations protected him against foreclosure; that the town never provided him with property tax bills; that the town refused to accept his proposed repayment plan; that the state court did not give him adequate notice of the summary judgment motion hearing, which led to his liability for the unpaid taxes; and that the state court violated his Due Process and Equal Protection rights.[6] The state court rejected all of these claims.[7]

Anthony C. Basilica was appointed as the Committee of Sale for the property by the state court.[8] Together with his father, Anthony R. Basilica, he conducted the foreclosure auction of Traylor's home.[9] On the day of the sale, Traylor objected that his case was under review at the appellate court.[10] Nevertheless, the property ultimately sold for $150,000 to Pacciuco LLC,

---

[5] *See* Foreclosure Action at "Complaint."
[6] *See, e.g.*, Foreclosure Action at Docs. #237.00 (violations of Due Process and Equal Protection Rights by the Superior Court; refusal to accept payment plan by the town), #260.00 (improper notice of summary judgment hearing; violations of Due Process and Equal Protection Rights by the Superior Court), Doc. #289.00 (violations of Due Process and Equal Protection Rights by the Superior Court; putative judgments against PHH protected him against foreclosure; failure of the town to provide him with a property tax bill; refusal to accept payment plan by the town; improper notice of summary judgment hearing).
[7] *See* Foreclosure Action at Docs. #216.50 (overruling #237); #258.01 (overruling #260); Doc. #289.01 (overruling #289).
[8] *See* Foreclosure Action at Docs. #258.00, #258.01.
[9] Doc. #130 at 90-91 (¶ 181.2).
[10] *See* Foreclosure Action at Doc. #260.

whose sole member is Patrick Saint Jean.[11] But those sale proceeds were insufficient to cover the property taxes, administrative expenses, and interest that Traylor owed the town.[12]

After taking title to the property, Pacciuco sought to evict Traylor from the premises.[13] Attorney Yoan Gregory represents Pacciuco in this ongoing action.[14] In the meantime, Waterford Building Official Steven Cardelle granted Pacciuco a license to perform construction on Traylor's former property.[15]

Traylor originally brought this suit on March 10, 2023.[16] He has since amended his complaint four times, producing nearly 100 pages of discursive allegations.[17] Given the tangled, non-chronological nature of the complaint, it is a challenge to summarize every claim Traylor makes. Nevertheless, it seems they are as follows: (1) the Connecticut Superior Court violated his Due Process and Equal Protection rights through various rulings issued in the eviction and foreclosure actions; (2) several defendants conspired to deprive Traylor of adequate notice of his property tax bill; (3) he is owed excess proceeds from the foreclosure sale of his house; (4) he was deprived of the equity from his house when it was sold for less than it was worth; (5) the lawyers who conducted the foreclosure auction improperly prevented him from bidding on his own home; (6) a variety of town-affiliated defendants sent him hate mail; (7) the town's building official violated his rights by granting Pacciuco a construction license for his former property; (8) the actions of PHH, the holder of his mortgage, caused his property tax woes in violation of CUTPA; and (9) the state court judgments against him are invalid, because they do not recognize

---

[11] Doc. #130 at 19, 33 (¶¶ 27, 85); Foreclosure Action at Doc. #301.
[12] *See ibid.* (concluding that Traylor's total debt was $164,180.88 and allocating $7,905.51 to the Committee of Sale and $142,094.49 to the town out of the $150,000 sale price).
[13] *See Pacciuco, LLC v. Traylor*, KNL-CV23-6060393-S (hereinafter "Eviction Action") at Doc. #100.31.
[14] *Ibid.*
[15] Doc. #130 at 19, 84 (¶¶ 30, 178).
[16] Doc. #1.
[17] *See* Doc. #130 at 1-95; *see also* Docs. #1, #17, #22, #92.

his property to be two subdivided lots, rather than a single parcel of land.[18] He characterizes most of these claims as violations of the federal constitution, made actionable by 42 U.S.C. § 1983.[19] He also alleges violations of 42 U.S.C. § 1985(3) and state law.[20]

## DISCUSSION

For purposes of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6), a complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain a plaintiff's claims for relief. *See, e.g.*, *Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In assessing the allegations in a complaint, the Court may also consider any documents attached as exhibits to, incorporated by reference in, or integral to the complaint, *see Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018), as well as certain public records of which it can take judicial notice, *see Bristol*, 685 F. App'x at 28.

If the plaintiff is a *pro se* litigant, as Traylor is here, the Court must liberally construe the complaint and interpret it to raise the strongest grounds for relief that its allegations suggest. *See, e.g.*, *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish at least plausible

---

[18] *See, e.g.*, Doc. #130 at 3-8, 14-15, 36-37, 39, 42-43, 64, 84-85, 89-90 (¶¶ 4-5, 8, 8.2, 13-15, 103, 108, 122, 140, 140.6, 180.13, 181, 184).
[19] *See, e.g.*, *id.* at 8, 37, 42-43, 46-47, 50 (¶¶ 8.2, 110, 140, 140.6, 140.18, 144-45).
[20] *See, e.g.*, *id.* at 20, 42, 46-47, 52, 69-70 (¶¶ 37, 140, 140.18, 147.3, 148).

grounds for a grant of relief. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

While Traylor's complaint purports to contain ten counts, I do not limit my analysis to those specific claims. Instead, consistent with the solicitude afforded to a *pro se* litigant, I also consider counts that are suggested (but not explicitly raised) in other parts of the document. Given the large number of potential claims that Traylor raises, it makes most sense to discuss his claims on a defendant-by-defendant basis rather than claim-by-claim.

### *State of Connecticut and the Superior Court*

The State of Connecticut's motion to dismiss appears to be on behalf of itself, the Superior Court, and any judges of that court sued individually.[21] The motion asserts (among other things) Eleventh Amendment immunity on behalf of the State and the Superior Court, judicial immunity on behalf of the individual judges, and the *Rooker-Feldman* and *Younger* abstention doctrines in defense of the state court decisions.[22] Traylor acknowledges in his response that the State is immune from suit under the Eleventh Amendment and that the individual judges are entitled to judicial immunity.[23] Accordingly, he "voluntarily dismisses" those parties.[24] However, he still seeks review of the state court rulings, arguing that the *Rooker-Feldman* doctrine is inapplicable.[25]

To the extent that Traylor intended to withdraw all his claims against the State, Superior Court, and individual judges, I will dismiss those claims and deny the motion to dismiss as moot. However, because Traylor's brief also suggests an intention to maintain his claims against these

---

[21] Doc. #137-1; Doc. #165. It is somewhat unclear whether Traylor intended to sue individual judges of the Superior Court.
[22] Doc. #137-1 at 14-24.
[23] Doc. #154 at 5.
[24] *Ibid.*
[25] *Id.* at 5-6.

6

parties for the purpose of challenging the state court rulings, I must briefly explain why such claims fail.

Assuming for the sake of argument that Traylor could seek relief from the state court judgments against him in federal court, the State of Connecticut and the Superior Court (as an institution) would be the wrong defendants. As the State argues and Traylor concedes, the Eleventh Amendment largely bars suits by private citizens against the States or an arm thereof. *See Campbell v. City of Waterbury*, 585 F. Supp. 3d 194, 201 (D. Conn. 2022). This includes suits against the Superior Court and suits under the Takings Clause of the Fifth Amendment. *See id.* at 201-03. It also includes both suits for injunctive relief and suits for monetary damages. *See McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001). Accordingly, Traylor has no claim or form of relief available against either the State of Connecticut or the Superior Court.

Next, to the extent that Traylor seeks to bring federal constitutional claims under § 1983 for injunctive relief against individual state court judges—*e.g.*, for an order requiring a state court judge to modify, withdraw, or overrule her previous order—the text of § 1983 serves as a barrier. *See Cinotti v. Adelman*, 709 F. App'x 39, 41 (2d Cir. 2017). That statute provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Traylor has not alleged the violation of a declaratory degree or the unavailability of declaratory relief, and so he cannot use § 1983 to seek an injunction to alter rulings issued by those judges.

Finally, even if Traylor has some unexplored procedural route to seeking injunctive relief against state court judges, the *Rooker-Feldman* doctrine would prevent me from revisiting the rulings those judges have issued in the foreclosure cases. The *Rooker-Feldman* doctrine

"jurisdictionally bars the federal courts from hearing 'cases that function as de facto appeals of state-court judgments.'" *Smith v. Bendett & McHugh, P.C.*, 2023 WL 372784, at *4 (D. Conn. 2023) (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018)). It applies when four requirements are met: "'(1) the federal-court plaintiff … lost in state court; (2) the plaintiff … complain[s] of injuries caused by a state-court judgment; (3) the plaintiff … invite[s] district court review and rejection of that judgment; and (4) the state-court judgment [was] rendered before the district court proceedings commenced.'" *Ibid.* (quoting *Sung Cho*, 910 F.3d at 645).

Here, there is no doubt that each of the criteria has been fulfilled. Traylor complains that he was denied adequate notice of a critical hearing, that Waterford never notified him of his tax bill, that the town should have allowed him a repayment plan, and that PHH was ultimately responsible for his injuries; state court judges ruled against him in each instance.[26] He asserts that these decisions violated his Due Process and Equal Protection rights under the Fourteenth Amendment, as well as his Fifth Amendment rights under the Takings Clause—such violations would be "injuries" caused by the state court judgment. *See Canning v. Admin. for Children's Servs.*, 588 F. App'x 48, 49 (2d Cir. 2014). As a result, the decisions in Traylor's foreclosure proceeding are not an appropriate subject for this Court to revisit, which is consistent with the decisions of other federal courts asked to sit in review of state court foreclosure judgments. *See, e.g.*, *Vossbrinck v. Accredited Home Lenders, Inc.* 773 F.3d 423, 427 (2d Cir. 2014).

### *Town of Waterford*

Traylor alleges that the town is responsible for much of his current predicament. He claims that the town failed to send him property tax bills, leading to the lien on his house and

---

[26] *See, e.g.*, Foreclosure Action at Docs. #237.00; #260.00; Doc. #289.00; *see also* Foreclosure Action at Docs. #216.50 (overruling #237.00); #258.01 (overruling #260.00); Doc. #289.01 (overruling #289.00).

subsequent foreclosure.[27] He further asserts that the town sold his property for far less than it was worth at the foreclosure auction, depriving him of much of his equity in his home.[28] Finally, he argues that he only owes about $98,000 in taxes, meaning that he should have received the excess from the $150,000 sale price.[29] All three claims appear to be brought under § 1983—the first alleges a Fourteenth Amendment violation (Due Process Clause), while the next two each assert violations of the Fifth Amendment (the Takings Clause) and the Eighth Amendment (the Excessive Fines Clause). However, he also reasserts the latter two claims as violations of the Takings Clause of the Connecticut Constitution.[30]

The town maintains that all of these claims are barred by the *Rooker-Feldman* doctrine.[31] That is certainly true of Traylor's claim that the town failed to inform him of his property tax liability in a timely fashion. In the foreclosure action, Traylor advanced that argument and was rebuffed by the state courts. Because the injury Traylor asserts from the town's failure to timely inform him of his tax liability is the ensuing judgment of foreclosure that ensued, he is seeking to have me review the state court's decision leading to the foreclosure judgment. That I am not permitted to do. *See Rodriguez v. Diaz*, 777 F. App'x 20, 21 (2d Cir. 2019) (*Rooker-Feldman* doctrine applied because "[r]eaching the merits of Rodriguez's claims would necessarily require the district court to reassess the state court's judgment").

But Traylor's claims against the town under the Takings Clause, Excessive Fines Clause, and the Connecticut Constitution were not raised and decided in state court prior to the initiation of this case. Indeed, these claims appear to be modeled on the United States Supreme Court's

---

[27] *See, e.g.*, Doc. #130 at 7-8 (¶ 8.2).
[28] *Id.* at 4, 32 (¶¶ 8, 81).
[29] *Id.* at 4, 32, 41 (¶¶ 8, 81, 137).
[30] *Id.* at 38-40 (¶¶ 114-125).
[31] Doc. #135-1 at 10-12.

9

recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), which was decided in May 2023 after Traylor filed this lawsuit.[32] Accordingly, the *Rooker-Feldman* doctrine does not bar those claims against the town.

Nevertheless, I will still dismiss the claims against the town, because Traylor's allegations do not state a plausible cause of action. He does not cite federal law or precedent that requires the government to compensate a debtor for any deficiency between the assessed market value of a property and the sale price at a foreclosure auction. As the Supreme Court has observed in another context, "[w]hen [proper] procedures have been followed … it is 'black letter' law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 542 (1994). Courts have rejected the notion that the government must compensate a debtor for equity not realized during a foreclosure sale when the price of the sale is less than the alleged fair market value. *See Freed v. Thomas*, 81 F.4th 655, 658-59 (6th Cir. 2023); *Pung v. Cty of Isabella*, 632 F. Supp. 3d 743, 751-52 (E.D. Mich. 2022).

The Supreme Court's decision in *Tyler v. Hennepin County* is not to the contrary. The decision in *Tyler* stands only for the proposition that the debtor is entitled to the surplus of the proceeds of the sale that are above the underlying tax debt. *See Tyler*, 598 U.S. at 642, 647. Here, the sales price was $150,000. But in light of the state court records—which I may judicially notice—it is quite clear that Traylor owed more in tax debt than the sale price of his property.[33]

---

[32] *See, e.g.*, Doc. #130 at 1-2, 52 (¶ 1, 147.3).
[33] *See* Foreclosure Action at Doc. #301 (concluding that Traylor's total debt was $164,180.88 and allocating $7,905.51 to the Committee of Sale and $142,094.49 to the town out of the $150,000 sale price); Doc. #153 at 2 (Traylor's brief acknowledging court's ruling).

10

Accordingly, there is no surplus above his tax debt that could be remitted to Traylor, and Traylor has no grounds for relief under *Tyler*.

That leaves Traylor's claims under the Connecticut Constitution, which are state law claims. Federal courts exercising federal question jurisdiction have supplemental jurisdiction to hear state law claims that form part of the same case or controversy. 28 U.S.C. § 1367(a). Nevertheless, when all the federal claims in a federal question case have been dismissed at the pleading stage, federal courts should ordinarily decline to exercise supplemental jurisdiction. *See, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006); *see also* 28 U.S.C. § 1367(c)(3). Because I will dismiss all of Traylor's federal law claims, I will decline to exercise jurisdiction over Traylor's claims against the town under the Connecticut Constitution. This analysis applies equally to any state law claims Traylor seeks to bring against other defendants.

### *Alan Wilensky*

Traylor seeks to press the same claims against Alan Wilensky—a tax collector for Waterford—that he brought against the town, again under § 1983.[34] The result is unchanged. The *Rooker-Feldman* doctrine bars his claim that he was not properly notified of his tax liability. Although Wilensky was not party to the state court foreclosure action, a plaintiff may not avoid the doctrine simply by raising the same claim against a different defendant in federal court. *See Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705 n.17 (S.D.N.Y. 2011). "[I]n determining whether the *Rooker-Feldman* doctrine bars review of a case, courts focus on whether the cases share the same central issue, not the same defendants." *Chalasani v. Elia*, 2023

---

[34] Doc. #130 at 35-37, 40-41, 42, 68 (¶¶ 96-113, 126-132 140, 195).

WL 8261493, at *9 (E.D.N.Y. 2023). Likewise, Traylor's claims against Wilensky under the Takings Clause and Eighth Amendment fail on their merits as described above.

### *Steven Cardelle*

Traylor's allegations against Cardelle are quite limited. He asserts that Cardelle was part of a conspiracy to prevent Traylor from paying his property taxes and that he violated Traylor's rights by granting a construction permit to Pacciuco, the new owner of Traylor's former property.[35]

The *Rooker-Feldman* doctrine bars both of these claims. With regard to the first claim, Cardelle is in the same position as Wilensky. Though he was not party to the foreclosure action, the injury complained of stemming from Cardelle's alleged misconduct was the foreclosure judgment, and I cannot rule on the claim against Cardelle without necessarily revisiting the state court's judgment.

Meanwhile, the second claim is effectively a direct challenge to the state court's foreclosure judgment and transfer of title to Pacciuco. Cardelle's grant of a permit to Pacciuco for construction on the subject property could have injured Traylor only if he had some continuing interest in the property. And to conclude that Traylor had some remaining interest in the property, I would need to reject the state court's rulings on the subject. Accordingly, the *Rooker-Feldman* doctrine bars this claim as well. If there is any aspect of the claim that does not

---

[35] *Id.* at 42, 84, 93 (¶¶ 140, 178, 185).

fall within the *Rooker-Feldman* doctrine, it involves a state law claim over which I decline to exercise supplemental jurisdiction.

### *Lloyd Langhammer*

As previously mentioned, Langhammer represented the town during its foreclosure proceedings against Traylor. Traylor alleges that Langhammer "committed fraud upon the Bankruptcy Court" in Traylor's bankruptcy case, conspired to prevent Traylor from paying his property taxes, sent him hate mail, and was "deliberate[ly] indifferen[t] to the safety and lives of the citizens and residents" of Waterford.[36] He purports to bring these claims under 42 U.S.C. §§ 1983, 1985(3).

I start once again by dismissing under the *Rooker-Feldman* doctrine the claim that Langhammer helped prevent Traylor from paying his taxes. The same reasons described for Wilensky and Cardelle are equally applicable to Langhammer.

Next, I will dismiss Traylor's claims against Langhammer brought under § 1983. To maintain a suit under § 1983 the defendant must have been acting "under color of law." Here, it is clear that the activities of Langhammer—a private attorney hired to represent the town in the eviction matter—do not fit that description. Courts have repeatedly rejected the notion that a lawyer representing a public entity is automatically a state actor for purposes of § 1983. *See, e.g.*, *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 284-85 (N.D.N.Y. 2022); *Glacken v. Inc. Vill. of Freeport*, 2012 WL 894412, at *5 (E.D.N.Y. 2012). The attorney might be subject to a § 1983 claim if the complaint alleges facts demonstrating that she acted in concert with a state actor to commit unconstitutional acts. *See Rys v. Clinton Cent. Sch. Dist.*, 2022 WL 1541301 at *6 (N.D.N.Y. 2022) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)).

---

[36] *Id.* at 43-44, 66, 80, 92 (¶¶ 140.6, 104.7, 168, 181.5, 189).

But there are no allegations—outside the conspiracy claim barred by the *Rooker-Feldman* doctrine—that Langhammer worked together with public officials or exercised public authority for any purpose other than representing the town in court. Absent such allegations, Langhammer cannot be considered to be acting under color of law for § 1983 purposes. *Cf. Vaughn v. Phoenix House N.Y., Inc.*, 957 F.3d 141, 147 (2d Cir. 2020) ("to state a Section 1983 claim against a private entity, the plaintiff must show that: (1) the entity acts pursuant to the coercive power of the state or is controlled by the state; (2) the state provides significant encouragement to the entity, and the entity is either a willful participant in joint activity with the state or the entity's functions are entwined with state policies; or (3) the entity has been delegated a public function by the state").

Finally, to the extent that Traylor intends to bring a § 1985(3) conspiracy claim other than the tax payment conspiracy barred by the *Rooker-Feldman* doctrine, this claim also fails. Section 1985(3) is a Reconstruction Era statute that (in relevant part) creates a civil remedy against private persons who conspire to deprive others of the equal protection of the law. *See Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017). However, "the Supreme Court has recognized only two federal constitutional rights for purposes of a § 1985(3) claim that are protected against private as well as government encroachment: 'the Thirteenth Amendment right to be free from involuntary servitude ... and, in the same Thirteenth Amendment context, the right of interstate travel.'" *Doe v. Avon Old Farms School, Inc.*, 2023 WL 2742330, at *9 (D. Conn. 2023) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993)). Traylor does not

14

allege violations of either of these rights, and so he has not alleged a cause of action under § 1985(3).

### *Anthony R. Basilica, Anthony C. Basilica, Pacciuco, Patrick Saint Jean, and Yona Gregory*

Each of the above-named defendants became involved in the case at the point of the foreclosure auction or later. The two Basilica defendants conducted the foreclosure auction on behalf of the Superior Court; Pacciuco, whose sole member is Saint Jean, purchased the house at auction; and Yona Gregory represented Pacciuco in eviction proceedings in state court.[37] Traylor contends that these defendants collectively and improperly prevented him from bidding on his house at the foreclosure auction.[38]

This claim is barred in major part by the *Rooker-Feldman* doctrine. Traylor raised this claim in state court in his objection to Anthony C. Basilica's motion for approval of the sale and the associated report. Nevertheless, the state court approved the sale and report—as a result, I

---

[37] *Id.* at 33, 64, 78 (¶¶ 85, 162, 184); Eviction Action at Doc. #100.31.

[38] Traylor also accuses several individual defendants, including the Basilicas, Gregory, and Langhammer, of sending him hate mail. To the extent Traylor might have a cause of action based on these allegations, it would sound in state tort law. For the reasons stated previously, federal district courts generally should not exercise supplemental jurisdiction over state law claims in a non-diversity case when the federal claims have been dismissed at an early stage. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). While Traylor's allegations are disturbing if true, they are better addressed by a state court.

would need to reject the state court's conclusion to rule in Traylor's favor, which I lack jurisdiction to do.

Moreover, none of these defendants are state actors. So Traylor has no grounds under the federal constitution to proceed against them. To the extent that he alleges any state law claims against these defendants, I decline to exercise supplemental jurisdiction over these claims.

### *PHH Mortgage Corporation*

Traylor purports to bring a CUTPA claim against PHH, the company that purchased his mortgage debt from Emporio.[39] It is not clear precisely what conduct Traylor takes issue with, but it appears to be related to PHH's efforts to collect on the mortgage over a decade ago and long beyond the three-year statute of limitations that applies to CUTPA claims. *See* Conn. Gen. Stat. § 42-110g(f). During PHH's unsuccessful foreclosure action, Traylor asserted CUTPA as a special defense. *See Traylor*, 2010 WL 2926462, at *1. It appears that Traylor either asserts a new CUTPA claim based on the same underlying conduct, or he believes that the underlying counterclaim was never adjudicated.[40]

Claims under CUTPA are, of course, state law claims. I will accordingly decline to exercise supplemental jurisdiction over these claims for the reasons previously discussed.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss (Docs. #133, #135, #136, #137, #138, #149) as to all live claims, and DENIES the motions as moot to the extent that they seek to dismiss claims Traylor has withdrawn. The Court also DENIES as moot Traylor's motion to amend the Rule 26(f) report (Doc. #159) in light of the dismissal of his claims. The Clerk of the Court shall close this case.

---

[39] *See, e.g.*, Doc. #130 at 52 (¶ 147.3).
[40] *Id.* at 52, 72, 76-77 (¶¶ 147.3, 152.3, 157, 159).

It is so ordered.

Dated at New Haven this 28th day of February 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge